MARY A. THARP, Appellee, v. C. E. JAMISON, Sheriff, JOHN HARNESS ET AL., Appellants.

Alteration of instruments: BURDEN OF PROOF. An erasure or alteration apparent upon the face of an instrument raises no presumption that it was made after delivery, but the burden of so showing is upon the party attacking the instrument, and when he has so shown the burden of explanation then falls upon the other party.

Same. An erasure or interlineation appearing upon the face of an instrument is not an alteration in a legal sense unless made after delivery.

Same: EVIDENCE. In this action the evidence is held to support a finding that erasure of one initial of the grantee in a deed, so that the wife of the judgment debtor became the grantee rather than the debtor, was made before its delivery.

*Appeal from Van Buren District Court.*—HON. D. M.
ANDERSON, Judge.

TUESDAY, FEBRUARY 13, 1912.

SUIT in equity against a sheriff and an execution
plaintiff to set aside a sheriff's sale, and to enjoin the issu-
ance of the sheriff's deed thereunder to certain real estate.
The plaintiff alleged that she was the owner of such real
estate, whereas it was levied upon by the sheriff as the
property of her husband under an execution against him.
There was a decree for the plaintiff, and the defendants
appeal.—*Affirmed.*

*Walker & McBeth,* for appellants.

*Robt.* and *H. B. Sloan* and *J. C. Calhoun,* for ap-
pellee.

EVANS, J.—The controversy in this case turns upon
a question of fact. Was the plaintiff the owner of the real
estate in question, or was her husband the owner thereof?

One or the other of them acquired the title by war-
ranty deed from one John Miller on November 24, 1903.
This deed was lost before it was recorded, and was not
found until after the beginning of this action. It was
found before the trial, and was introduced in evidence.
Such deed on its face runs to the plaintiff as grantee. Such
deed, however, shows upon its face that since it was first
written there was a change or erasure of the first initial
in the name of the grantee. The plaintiff's name is "Mary
A. Tharp." Her husband's name is "W. M. Tharp." The
name of the grantee appearing in the deed is "M. Tharp."
The contention of the defendants is that the name as orig-
inally written was "W. M. Tharp," and that it was altered
after delivery by the erasure of the "W." The contention

of the plaintiff is that the name of the grantee was orig-
inally written in the deed as "M. M. Tharp" (this was the
name of a former wife of the plaintiff's husband); that
upon discovery of the mistake the first initial was elim-
inated by erasure by the grantor, Miller, before delivery.
Miller died before the trial. That an erasure of an initial
was made in the deed after it was written is apparent upon
its face, and is not disputed by either side.

The crucial question is, Was the erasure made before
delivery or after? The burden was upon the defendants
to prove that the apparent alteration was made after de-
livery. Such fact being proved, the burden
of explanation would then fall upon the
plaintiff. An erasure or alteration apparent

1. ALTERATION OF
INSTRUMENTS:
burden of
proof.

upon the face of the instrument raises no presumption
that it was made after delivery. *Hagan v. Insurance Co.,*
81 Iowa, 321; *McGee v. Allison,* 94 Iowa, 527. The con-
tention of the appellant at this point is that the only bur-
den upon him is to show that an alteration was in fact
made, and that the burden is then cast upon the plaintiff
to show that such alteration was made before delivery or
otherwise to explain or excuse. There are some jurisdic-
tions where this rule is maintained. *Jordan v. Stuart,* 23
Pa. 244. Appellant cites the following cases in support of
his contention: *Robinson v. Reed,* 46 Iowa, 220; *Smith v.
Eals,* 81 Iowa, 235; *Conger v. Crabtree,* 88 Iowa, 536;
*Shroeder v. Webster,* 88 Iowa, 627; *First National Bank
v. Zeimes,* 93 Iowa, 140; *Maguire v. Eichmeier,* 109 Iowa,
301; *Rambousek v. Mystic Toilers,* 119 Iowa, 263. None
of these cases sustain appellant's contention in this respect.
Some of them are cases wherein the alleged alteration was
shown to have been made after delivery, and where the bur-
den of explanation was thereby thrown upon the party
offering the instrument. But none of them dispense with
the necessity that it be made to appear that the alleged

alteration was made after delivery before any presumption of fraud can arise therefrom.

An erasure or interlineation appearing upon the face of an instrument is not an alteration in a legal sense unless made after delivery. This discrimination, however, is not always observed in the use of such terms, and the word "alteration" is often used in the books as synonymous with the word "erasure" or "interlineation." If there is any inconsistency in the language of our cases at this point, it will be found to arise from the double sense in which the word "alteration" is sometimes used.

2. SAME.

Turning now to the question of fact, the evidence is very conflicting. If the instrument itself had not been produced in evidence, the testimony on behalf of the defendants would be quite persuasive. The widow of Miller and the notary public both testified that W. M. Tharp was the grantee in the deed as originally drawn. Miller himself took the deed when it was drawn. The only direct evidence of its actual condition at the time he delivered it is that of the plaintiff and her husband. They testify that it is in the same condition now that it was at the time of the delivery, and that the erasure was explained by Miller. The case turns upon the truth or falsehood of this testimony as to the actual condition of the deed at the time of delivery. The circumstances are such that this testimony should be scrutinized carefully in the light of the whole record, and we have subjected it to that process. It is not necessarily inconsistent with the testimony of Mrs. Miller and of the notary public. Good reasons are also shown why the deed should have been made to Mrs. Tharp rather than to her husband. The husband had formerly owned this property. He had originally purchased it in 1901 subject to a mortgage. The mortgage was held by Miller. Miller foreclosed the mortgage, and sold the property at execution sale, and took a

3. SAME: evidence.

sheriff's deed therefor in September, 1903.    Tharp was then
in failing circumstances, and was owing his wife several
hundred dollars for money received from her about the time
of their marriage.    Miller agreed to convey the property
for the amount of his debt plus expenses.    This amount
was received from Tharp by certain notes under an ar-
rangement between him and his wife that it was to apply
upon the indebtedness to her.    After the property was ac-
quired, however, it was included by Tharp in his return to
the assessor, and it was assessed to him.    He also rented
it and collected the rent in his own name.    We will not
stop now to deal with the explanation given of this circum-
stance.    The explanation given is not altogether plausible,
but it is by no means impossible.

The most important corroborating fact in our judg-
ment is the appearance of the deed itself.    This deed was
undoubtedly lost shortly after its delivery.    There was no
motive for its concealment at that time.    Nor is it apparent
that there was any pressing motive at that time for a fraud-
ulent alteration of the deed.    There was nothing to prevent
a conveyance by the husband to the wife.    The question
naturally arises in the mind whether this alteration was
recently made and after this controversy had come into
view.    The judgment against Tharp upon which the ex-
ecution sale was made was entered in 1907.    The sheriff's
sale was had in April, 1909.    And on the day of the sale
plaintiff caused notice of her ownership to be served upon
the defendants.    In August of the same year she brought
this action.    Some months later her deed was found under
circumstances free from suspicion.    It was found accident-
ally in the folds of the "carpet seat" of an old rocking
chair which had been discarded for years and which
had been exposed to the weather.    With this deed
when so found was another instrument and both were
folded together "double."    They were weather-stained.
The trial court found that the appearance of the instru-

ment was quite conclusive that the erasure was made long ago, and could not have been made after its exposure to the weather and after its discovery. It appears, also, that the deed was folded in the usual way, and that the names of grantor and grantee were "briefed" in the usual form on the back of the folded deed. When the deed was lost, it was again folded "double" so that the upper end where the "briefing" was rested against the blank space at the lower end. The names of grantor and grantee which were briefed upon the upper end were thereby impressed or "copied" upon the blank space below. This impression or "copy" shows the name "M. Tharp." The present appearance of the deed as described by the trial court in a written opinion filed is as follows: "The first initial letter whether 'W.' or 'M.' was erased in the body of the deed and in the briefing on the back, shortly after its execution. The erasure was done by someone who knew how to do this kind of work, and so perfectly done that it is now impossible to tell from the deed itself what the first initial really was. Tharp and wife both testify that the deed is now just as it was when it came into their hands. There is no evidence rebutting this. The deed seems to have been folded and laid away. The briefing on the back has been copied on the bottom of the back where it was folded against the top with the first initial missing. This is a circumstance tending to corroborate Tharp and his wife that the deed is now as when received by them. It is evident from the deed itself that there is no recent change in it, and not a change made for the purpose of this suit." The foregoing statement of the trial court is not challenged, nor is the original deed presented to our view. We deem the circumstance of great importance as strongly corroborative of the direct testimony of the plaintiff and her husband. In the light of this circumstance, we think the testimony of the plaintiff and her husband should be accepted to the effect that the erasure in question was made

before delivery. Such fact being found, it controls the case, regardless of the subsequent conduct of the plaintiff's husband in collecting the rent in his own name. This was the conclusion reached by the trial court.

The decree entered below must therefore be *affirmed*.